UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHADNEY HAMER,

Plaintiff,

v.

KENT, COUNTY OF, et al.,

Defendants.

Case No. 1:25-cv-1788

Honorable Phillip J. Green

# OPINION

This is a civil rights action brought by a former detainee of the Kent County Correctional Facility under 42 U.S.C. § 1983. On July 24, 2026, the Court granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 10.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.27.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the

named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the sine qua non directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that

"[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's pro se complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan. The events about which he complains, however, occurred

at the Kent County Correctional Facility (KCCF). Plaintiff sues the following Defendants: Doctor A. Malik, Medcart Nurse G. Janiyah, Medical Provider Vital Core Health Strategies (Vital Core), Registered Nurse T. Ashley, Admin. H. Cassandra, Kent County, and the Kent County Sheriff.[1]

Plaintiff alleges that on June 30, 2025, he had a stroke. (Second Am. Compl. (SAC), ECF No. 11, PageID.144; ECF No. 11-1, PageID.151.) Plaintiff was subsequently arrested, taken to the hospital for medical care, and then taken to KCCF, where he was detained from July 8, 2025, until April 2026. (SAC, ECF No. 11, PageID.144; ECF No. 11-1, PageID.151.)

When Plaintiff first arrived at KCCF, Plaintiff was in a wheelchair due to injuries he received prior to his incarceration. (ECF No. 11-1, PageID.151.) Plaintiff "was brought in by wheelchair and dumped on the ground." (*Id*) Hours later, a non-party deputy noticed that Plaintiff had not moved and that Plaintiff's face was drooping. (*Id.*) "Medical" took Plaintiff's blood pressure and Plaintiff was transported to the hospital. (*Id.*)

Upon Plaintiff's return to KCCF, Plaintiff was placed in the medical unit in a cell with a hospital bed. (*Id.*, PageID.152.) The alert button in the cell was disabled, and Plaintiff used a urinal "jug" because the toilet did not have grab bars to allow him to transfer from his wheelchair. (*Id.*) Plaintiff was also unable to access the

---

[1] Defendants Kent County, Kent County Sheriff, and Vital Core are sued in their official capacities only. (Second Am. Compl. (SAC), ECF No. 11, PageID.143–146.) All other Defendants are sued in both their official and personal capacities. (*Id.*)

shower in his wheelchair. (*Id.*) He was given one shower during his two weeks in this room, despite numerous requests for additional showers. (*Id.*)

Plaintiff was eventually moved to a wheelchair-accessible room in unit "M1". (*Id.*) There, Plaintiff had difficulty transferring from his wheelchair to the toilet. (*Id.*) Plaintiff also had difficulty transferring from his wheelchair to his bed due to a lack of grab bars on the bed. (*Id.*)

While Plaintiff was in M1, he asked Defendant Janiyah for Tylenol to help alleviate his migraines and for a different wheelchair. (*Id.*, PageID.158–159.) Defendant Janiyah refused, telling Plaintiff to "put in a kite." (*Id.*, PageID.159.) When Plaintiff asked, "what does that do for me now?", Defendant Janiyah told Plaintiff that she would contact the "charge nurse." (*Id.*) Plaintiff was never seen by the charge nurse. (*Id.*)

On August 21, 2025, Plaintiff sent a medical kite asking for a Tylenol refill. (*Id.*, PageID.164.) Six days later, Defendant Cassandra responded, "Provider has been sent a notice." (*Id.*) On August 27, 2025, Plaintiff sent a second kite stating that his authorization for Tylenol had expired on August 24, 2025, and that he was experiencing pain from a migraine. (*Id.*) Defendant Cassandra responded, "You are on schedule for the medical provider to see you. Please notify medical if you have any worsening symptoms while awaiting to be seen." (*Id.*, PageID.164–165.)

On one occasion, Plaintiff had a "mini stroke" while in bed. (*Id.*, PageID.167.) When attempting to transfer to his wheelchair, fell and hit his head "due to worn and broken brakes on the wheelchair." (*Id.*) Non-party Deputy Brown found Plaintiff and

called for medical attention; Defendant Ashley responded to the call and asked Plaintiff several questions before having deputies pick Plaintiff up, place him in his wheelchair, and take him to the medical wing. (*Id.*) Plaintiff was then placed in a "suicide watch room" without his wheelchair for the remainder of the day, where Defendant Ashley gave Plaintiff medicines to stop Plaintiff's nausea and Tylenol to help alleviate his pain. (*Id.*) The following morning, Plaintiff was placed in his wheelchair and taken back to his cell. (*Id.*) Plaintiff realized that he had soiled his clothing and was given new clothing upon request. (*Id.*, PageID.169.)

On another occasion, Plaintiff had a "mini stroke" and Defendant Ashley responded to the call for medical attention. (*Id.*) Defendant Ashley stated, "You say it's a stroke. All I'm getting is high blood pressure. Did you take you meds tonight?" (*Id.*) Defendant Ashley also asked whether Plaintiff was in pain. (*Id.*) When Plaintiff replied that he was, Defendant Ashley told Plaintiff, "I'm going to put you on the providers list to be seen." (*Id.*, PageID.170.) She turned to her colleague and said, "Let her ass deal with him. I ain't got time." (*Id.*)

Plaintiff alleges that he sent a kite asking for medication and received a message stating, "Your kite has been received and electronically filed. Thank you." (*Id.*)

In or around September or October 2025, Defendant Malik saw Plaintiff on one occasion. (*Id.*, PageID.175.) During that evaluation, Defendant Malik told Plaintiff that Plaintiff would receive migraine medication instead of Tylenol due to the long-term effects of Tylenol. (*Id.*) When Plaintiff asked for a commode, shower seat, newer

wheelchair, and a rubber ball, Defendant Malik told Plaintiff that he should talk to the classification officer. (*Id.*, PageID.176–177.) With respect to Plaintiff's request for a new wheelchair, Defendant Malik responded, "A[n] old Dodge Neon is still a car." (*Id.*, PageID.177.) Plaintiff then told Defendant Malik that she was violating his rights by not giving him the requested items, and Defendant Malik replied, "Do what you need to do." (*Id.*) Defendant Malik then instructed Plaintiff to "get out" or Defendant Malik would "throw [Plaintiff] in the hole for threatening and intimidating behavior." (*Id.*)

On November 17, 2025, Plaintiff sent a kite addressed to Defendant Malik complaining of the strength of his medication and telling Defendant Malik that he would not buy Tylenol from the store. (*Id.*, PageID.178.) Defendant Malik responded by increasing the dose of Plaintiff's medication. (*Id.*, PageID.188.)

"Days later," Plaintiff was seen be another medical provider. (*Id.*, PageID.178.) "The next morning," Defendant Malik instructed non-party Nurse Bree and non-party corrections officers to take Plaintiff's wheelchair, but they did not do so. (*Id.*, PageID.181.) Defendant Malik later told Plaintiff's fiancé that she believed that Plaintiff could walk but was "too lazy" to do so. (*Id.*, PageID.182.)

Plaintiff states that he used the broken chair with a ripped seat for "weeks," causing Plaintiff "excruciating pain." (*Id.*, PageID.183.) He requested a new chair from Defendants Malik and Janiyah and non-parties but "medical" denied Plaintiff's requests. (*Id.*, PageID.183–184.)

On December 11, 2025, Plaintiff spoke with non-party Sergeant Flanagan concerning his medical complaints and Sergeant Flanigan promptly obtained a new wheelchair for Plaintiff and signed off on the relief requested in Plaintiff's past medical kites. (*Id.*, PageID.184–185.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated Plaintiff's rights under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) and subjected him to deliberate indifference and retaliation. (ECF No. 11-1, PageID.154.) Plaintiff seeks monetary and injunctive relief. (SAC, ECF No. 11, PageID.147.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

#### 1. Defendant Kent County

Kent County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, Kent County is liable only when an official policy or custom causes the constitutional injury. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity,

and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff alleges policies that Defendant "must adhere to and haven't." (ECF No. 11-1, PageID.194.) This does not state a *Monell* claim. Plaintiff fails to allege any facts whatsoever that would plausibly suggest the existence of a custom or policy that was the moving force behind his alleged constitutional injuries. *Cf. Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the

allegation). Therefore, the Court will dismiss Plaintiff's claims against Defendant Kent County for failure to state a claim.

**2. Defendant Vital Core**

A private entity, such as Vital Core, that contracts with a governmental entity to perform a traditional governmental function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54).

The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell* has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same). Therefore, Vital Core also cannot be held vicariously liable for the actions of its employees under § 1983. *See Connick*, 563 U.S. at 60; *City of Canton*, 489 U.S. at 392

As with Defendant Kent County, Plaintiff's complaint is devoid of any allegations suggesting that his alleged constitutional injuries were the result of official policies or customs employed by Vital Core. Accordingly, the Court will dismiss Vital Core as a Defendant.

**3. Official Capacity Claims**

Plaintiff sues Defendants in their official capacities. Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing

*Monell*, 436 U.S. at 690, n. 55). Therefore, an official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *see also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire*, 330 F.3d at 810; *Graham*, 473 U.S. at 165–66.

Here, Plaintiff's SAC alleges that Defendants are employed by either Kent County or Vital Core. Therefore, Plaintiff's official capacity claims against the named Defendants are claims against Kent County and Vital Core and will be dismissed for the same reasons discussed above.

**4. Retaliation**

Plaintiff alleges that Defendant Malik retaliated against him in violation of his First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that he engaged in protected activity by submitting grievances and medical kites from until October 24, 2025, until November 17, 2025. (ECF No. 11-1, PageID.187–189.) Plaintiff claims that, on November 20, 2025, Defendant Malik "intimidated and threatened" him by sending officers to his cell to take his wheelchair. (*Id.*, PageID.198–190.) Defendant Malik later told Plaintiff's fiancé that she believed that Plaintiff could walk but was "too lazy" to do so. (*Id.*, PageID.182.)

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x. 579, 579–80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Here, Plaintiff has not alleged any *facts* that would plausibly suggest that Defendant Malik's actions in instructing officers to take Plaintiff's wheelchair were motivated by Plaintiff's First Amendment protected conduct. Accordingly, the Court will dismiss any such claims.

However, Plaintiff also alleges that, when he told Defendant Malik that she was violating his rights by not giving him items that he requested, Defendant Malik told Plaintiff, "do what you need to do," and instructed Plaintiff to "get out" or Defendant Malik would "throw [Plaintiff] in the hole for threatening and intimidating behavior." (ECF No. 11-1, PageID.177.) Taking these allegations as true, the Court will allow Plaintiff to proceed with his limited First Amendment retaliation claim against Defendant Malik.

### 5. Medical Care Claims

Plaintiff brings claims of "deliberate indifference" against Defendants. The Constitution is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001); *see also Poynter by & through Fernandez v. Shirley*, 191 F.4th 745, 767 (6th Cir. 2026).[2] A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v.*

---

[2] Plaintiff's second amended complaint does not indicate whether Plaintiff was a pretrial detainee or convicted prisoner at the time of the events described. In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. *Id.* at 392–93. *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial detainment context[s]." *Brawner*, 14 F.4th at 592. The Sixth Circuit recently confirmed that "*Farmer v. Brennan*'s subjective standard properly governs deliberate-indifference cases brought under the Fourteenth Amendment as well" in cases concerning conditions of confinement. *Poynter*, 191 F.4th at 767. Therefore, the Court will apply the same standard regardless of whether Petitioner is treated as a pretrial detainee or convicted prisoner.

*Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks

omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted).

**a. Defendant Ashley**

Plaintiff alleges that Defendant Ashley responded to a request for medical attention after Plaintiff had a "mini stroke." (ECF No. 11-1, PageID.167.) Defendant Ashley asked Plaintiff several questions before having deputies pick Plaintiff up, place him in his wheelchair, and take him to the medical wing. (*Id.*) Plaintiff was then placed in a "suicide watch room" without his wheelchair for the remainder of the day, where Defendant Ashley gave Plaintiff medicines to stop Plaintiff's nausea and Tylenol to help alleviate his pain. (*Id.*)

On another occasion, Plaintiff had another "mini stroke" and Defendant Ashley responded to the call for medical attention. (*Id.*) Defendant Ashley stated, "You say it's a stroke. All I'm getting is high blood pressure. Did you take you meds tonight?" (*Id.*) Defendant Ashley also asked whether Plaintiff was in pain. (*Id.*) When Plaintiff replied that he was, Defendant Ashley told Plaintiff, "I'm going to put you on the provider[']s list to be seen." (*Id.*, PageID.170.) She turned to her colleague and said, "Let her ass deal with him. I ain't got time." (*Id.*)

The Court will assume without deciding that Plaintiff's "mini stroke" constitutes an objectively serious medical condition. However, there is no indication that Defendant Ashley was deliberately indifferent to that condition on either occasion. Plaintiff alleges that Defendant Ashley evaluated Plaintiff on both occasions, the first time, asking Plaintiff questions before transporting Plaintiff for observation and giving Plaintiff medications, and the second time, checking Plaintiff's vital signs before concluding that she was only "getting . . . high blood pressure."

Plaintiff's second amended complaint does not contain any facts that would plausibly suggest that Defendant Ashley was subjectively aware that that her actions or lack of further medical treatment placed Plaintiff at a substantial risk of serious harm. Moreover, there is no indication that Plaintiff's complaint of pain indicated a substantial risk of serious harm or that placing Plaintiff on the "provider's list" for his complaints of pain was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *See Estelle*, 429 U.S. at 105–106. Accordingly, the Court will dismiss Plaintiff's claims against Defendant Ashley.

**b. Defendant Malik**

Plaintiff alleges that, in or around September or October 2025, Defendant Malik evaluated Plaintiff and prescribed migraine medication instead of Tylenol due to the long-term effects of Tylenol. (ECF No. 11-1, PageID.175.) Defendant Malik also told Plaintiff that Plaintiff should talk to the classification officer regarding his requests for a commode, shower seat, newer wheelchair, and rubber ball. (*Id.*, PageID.176–177.) With respect to Plaintiff's request for a new wheelchair, Defendant Malik told Plaintiff, "A[n] old Dodge Neon is still a car." (*Id.*, PageID.177.)

On November 17, 2025, Plaintiff sent a kite to Defendant Malik complaining of the strength of his medication and Defendant Malik responded by increasing the dose of Plaintiff's medication. (*Id.*, PageID.178, 188.) And, after Plaintiff was seen by another medical provider, Defendant Malik told officers to confiscate Plaintiff's wheelchair, informing Plaintiff's fiancé that she believed that Plaintiff could walk but was too "too lazy" to do so. (*Id.*, PageID.178–183.)

First, regardless of whether Plaintiff's migraines constitute an objectively serious medical condition, Plaintiff's second amended complaint suggests that Defendant Malik responded to Plaintiff's concerns by prescribing medication for treatment and increasing the dose when needed.

Second, assuming that Plaintiff objectively required the items that he requested from Defendant Malik, there is no indication that Defendant Malik was deliberately indifferent to those needs. Defendant Malik specifically instructed Plaintiff to request the items from the classification officer and that it was the responsibility of "custody" to fulfill Plaintiff's requests. (*Id.*, PageID.176.) Plaintiff has not provided the Court with any facts that would plausibly suggest otherwise, particularly where Plaintiff ultimately received the items promptly after speaking with non-party Sergeant Flanagan. (*Id.*, PageID.184–185.)

Accordingly, for each of the foregoing reasons, the Court will dismiss Plaintiff's medical care claims against Defendant Malik.

**c. Defendant Janiyah**

Plaintiff alleges that, on one occasion, he asked Defendant Janiyah for Tylenol to help alleviate his migraines and for a different wheelchair, and that Defendant Janiyah responded by telling Plaintiff to "put in a kite," and that she would contact the charge nurse. (ECF No. 11-1, PageID.158–159.) Plaintiff alleges that he was never seen by the charge nurse and that Defendant Janiyah did not provide Plaintiff with a new wheelchair.

Assuming without deciding that Plaintiff's migraine at the time of his request to Defendant Janiyah rose to the level of an objectively serious medical condition,

Plaintiff has not alleged any facts that would plausibly suggest that Defendant Janiyah was aware that Plaintiff was at a substantial risk of serious harm in not receiving immediate medical attention as opposed to awaiting a response to a medical kite. Moreover, while Plaintiff alleges that he was never seen by the charge nurse, there is nothing to indicate that Defendant Janiyah was at fault for Plaintiff having not been seen by the charge nurse.

The same is true of Plaintiff's request for a new wheelchair. Plaintiff's SAC does not contain facts that would suggest that Defendant Janiyah was responsible for providing Plaintiff with a new wheelchair or that Defendant Janiyah, the Medcart Nurse, was responsible for the denial. Plaintiff asks the Court to fabricate plausibility to his claim from mere ambiguity; but ambiguity does not support a claim. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79. Therefore, the Court will dismiss Plaintiff's claims against Defendant Janiyah.

**d. Defendant Cassandra**

Plaintiff claims that, on August 21, 2025, Plaintiff sent a medical kite asking for a Tylenol refill. (ECF No. 11-1, PageID.164.) Six days later, Defendant Cassandra responded, "Provider has been sent a notice." (*Id.*) That same day, Plaintiff sent a second kite stating that his authorization for Tylenol had expired on August 24, 2025, and that he was experiencing pain from a migraine. (*Id.*) Defendant Cassandra responded, "You are on schedule for the medical provider to see you. Please notify medical if you have any worsening symptoms while awaiting to be seen." (*Id.*,

PageID.164–165.) Plaintiff does not allege that he engaged in any further communications with Defendant Cassandra.

As with Plaintiff's claims against Defendant Janiyah, Plaintiff does not indicate that he described the extent of his migraine pain to Defendant Cassandra and has not alleged any facts that would plausibly suggest that Defendant Cassandra was aware that Plaintiff was at a substantial risk of serious harm in not receiving immediate Tylenol for his migraine. Accordingly, the Court will also dismiss Plaintiff's claims against Defendant Cassandra.

#### 6. Claims Against "Medical," Non-Parties, and Unnamed Individuals

Plaintiff claims that his requests were denied by "medical." He also attributes various actions to non-parties and describes events without identifying the individuals involved. These factual allegations, even if construed against Defendants as a group, are insufficient to implicate any named Defendant.

As with any § 1983 claim, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 676. Thus, it remains Plaintiff's obligation to attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544. "Summary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Thus, Plaintiff's claims against "medical" and non-parties and allegations that do not identify the individuals responsible fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and

will be dismissed. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### B. ADA and RA Claims

Plaintiff contends that Defendants violated his rights under the ADA and RA. (ECF No. 11-1, PageID.198–207.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2).

Similarly, § 504 of the RA provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson County*, 219 F.3d 555, 557 n.3 (6th Cir. 2000) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 n.2 (6th Cir. 1995)). For

purposes of this opinion, the Court will assume that plaintiff has a disability under the ADA and RA.

However, Plaintiff also alleges that Defendants failed to provide Plaintiff with adequate medical care and medical supplies related to his disability and medical condition. In that respect, the ADA and RA do not create a remedy for plaintiff because his claim is essentially a disagreement with his healthcare providers over medical supplies. *See Allen v. MDOC*, No. 1:24-cv-736, 2024 WL 3548536 at *3 (W.D. Mich. July 26, 2024) ("[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'") (quoting *Nottingham v. Richardson*, 499 Fed. Appx. 368, 377 (5th Cir. 2012)); *Stevenson v. Pramstaller*, No. 2:08-cv-79, 2009 WL 1883878 at *3 (W.D. Mich. June 30, 2009) (observing that the ADA and RA "involve discrimination for an alleged disability and not medical treatment for that disability."). In short, "[t]he ADA does not create a remedy for medical malpractice." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). *See Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (concluding that an ADA lawsuit "cannot be based on medical treatment decisions"). Accordingly, the Court will dismiss Plaintiff's ADA and RA claims concerning his medical care, medical supplies, and treatment.

Plaintiff also alleges that, due to his use of a wheelchair and lack of mobility, the beds, toilets, tables, and shower facilities at KCCF were not accessible to him. (ECF No. 11-1, PageID.198–207.)[3] Taking these allegations as true, the Court finds

[3] Plaintiff does not allege that he was denied an opportunity to participate in or benefit from Vital Core's services due to his disability

that Plaintiff has sufficiently stated an ADA and RA claim against Kent County and Defendants employed by Kent County in their official capacities. However, Plaintiff's claims against Defendants in their respective official capacities each represent an identical ADA and RA claim against the entity by which they are employed. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690, n. 55). Therefore, Plaintiff's official capacity claims are redundant of Plaintiff's claims against Kent County. *See Foster v. Michigan*, 573 F. App'x 377, 389 (6th Cir. 2014). Because Plaintiff's ADA and RA claims against Kent County concerning a lack of accessible facilities remain in the case, the Court will dismiss as redundant Plaintiff's official capacity claims under the ADA and RA

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Defendants Kent County Sheriff, Ashley, Janiyah Vital Core, and Cassandra will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Kent County and Malik: § 1983 claims against Defendant Kent County, official capacity claims, medical care claims, First Amendment retaliation claims but for Plaintiff's claim against Defendant Malik for threatening to "throw [Plaintiff] in the hole for threatening and intimidating behavior," claims against "medical," non-parties and unnamed individuals, and ADA and RA claims against Defendant Malik and against Kent County concerning the provision of medical supplies. Plaintiff's First Amendment retaliation claim against

Defendant Malik in her personal capacity, and ADA and RA claims against Defendant Kent County related to inaccessible facilities remain in the case.

An order consistent with this opinion will be entered.

Dated: November 24, 2026

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge